UNITED STATES *v.* F. M. JABARA & BROS. (No. 3744)[1]

United States Court of Customs and Patent Appeals, April 30, 1934

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell*, special attorney, of counsel), for the United States.

*Curie, Lane & Wallace* (*Samuel Isenschmid* and *John R. Rafter* of counsel) for appellee.

[Oral argument April 10, 1934, by Mr. Lawrence and Mr. Isenschmid]

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges[2]

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding certain merchandise imported at the port of New York dutiable at the rate of 75 per centum ad valorem under the provision for embroidered articles in the latter part of paragraph 1430 of the Tariff Act of 1922.

The merchandise was classified and assessed with duty by the collector as "articles of lace or net, or, in part of lace or net", at the rate of 90 per centum ad valorem under the same paragraph. Appellee protested such classification and claimed that the merchandise was dutiable at 75 per centum ad valorem under said paragraph 1430, as found by the trial court.

---

[1] T. D. 47065.
[2] Hatfield, J., did not participate in this case.

Said paragraph 1430, so far as is here pertinent, reads as follows:

PAR. 1430. Laces, lace window curtains, burnt-out laces and embroideries capable of conversion into burnt-out laces, nets and nettings, embroidered or otherwise * * *; and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles; all the foregoing, finished or unfinished * * *, by whatever name known, and to whatever use applied, and whether or not named, described or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments, * * * 90 per centum ad valorem; embroideries not specially provided for, and all fabrics and articles embroidered in any manner by hand or machinery, * * *; all the foregoing, finished or unfinished, by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments, * * * 75 per centum ad valorem.

The merchandise here involved is described in the following stipulation entered into upon the trial before the Customs Court:

It is stipulated and agreed between counsel, in the matter of the above protest, as follows:

1. That the article submitted herewith and marked "Exhibit 1" is a sample of the item invoiced as "6008, 361 x 451, Ecru filet bedspread", and may be received in evidence as such.

2. That the article submitted herewith and marked "Exhibit 2" is a sample of the item invoiced as "6008, 225 x 225, Ecru filet square cover", and may be received in evidence as such.

3. That the article submitted herewith and marked "Exhibit 3" is a sample of one of the scarfs in the item invoiced as "5001, 91 x 181 x 225 x 271 x 361, Ecru filet 4 pcs. scarf set", and may be received in evidence as such.

4. That the article submitted herewith and marked "Exhibit 4" is a sample of the item invoiced as "6006, 67 x 97, Ecru filet chair back", and may be received in evidence as such.

5. That said exhibits 1 to 4 are representative of all the other items on the invoice except as they may differ in name, shape, size, or design.

6. That all the items on the invoice are made of cotton.

Both parties took testimony, which testimony is, to some extent, conflicting.

The Government contends that the involved merchandise consists of articles of filet lace, not embroidered, and that it is, therefore, dutiable as classified by the collector. Appellee contends that the articles are embroidered, and that the judgment of the trial court should be affirmed.

The articles in question are made by hand. It appears from the record that, in producing them, a design is first drawn upon paper. Pursuant to the design, a mesh or net foundation is made, usually by special order, and is of the size and shape required for the particular articles which are to be made. This mesh or net foundation is never used for any purpose other than the making of filet-lace articles of some description. This mesh or net is then stretched upon a frame, and the worker, with a needle and thread, reproduces by hand upon the mesh foundation the design previously drawn upon paper, following

the scale of the design. This work is done with what is termed a "darning" stitch. After the filling-in process has been completed, another design is worked upon the edge of the articles by needle and thread, by what is known as a "buttonhole" stitch. After this is completed, the mesh or net which may be outside of the line of the "buttonhole" stitch is cut away, leaving the article with an irregularly-shaped edge. In this finished condition all of the merchandise was imported, with the exception of the articles represented by Exhibit 4, which articles have said "buttonhole" stitch on one edge only, the other three sides being finished with what is termed a "run edge."

Appellee contends that the foundation mesh or net is unfinished lace, and that the darning and buttonhole stitches constitute embroidery upon said unfinished lace; that if it should be held that said foundation mesh is not unfinished lace, then said material, after the darning stitches have been applied, became a lace article, and the buttonhole stitch placed thereon afterward makes the article an embroidered article; that if it should be held that the involved articles are not finished laces embroidered, they should be held to be unfinished lace articles embroidered.

The Government insists that none of these contentions of appellee is well founded, and that the articles here involved are lace articles not embroidered.

The trial court in its decision reviewed a number of the previous decisions of this court, and of its own, and, after a comprehensive discussion of the issues in the case, said:

For the reasons hereinbefore stated and after a careful examination of the entire record, including an inspection and examination of all the samples in evidence, we find that all the merchandise on the invoices covered by this suit is either unfinished laces, embroidered, articles composed in part of lace, by whatever name known, embroidered, lace articles, embroidered, or laces, embroidered.

In either event said merchandise is properly dutiable at the rate of 75 per centum ad valorem under the second part of paragraph 1430 of the Tariff Act of 1922 as embroideries, or embroidered articles, and we so hold. * * *

If the articles here involved are embroidered articles, the judgment of the trial court should be affirmed. Inasmuch as we are of the opinion that the buttonhole stitching upon the edge of the articles constitutes embroidery, and if such stitches were omitted the articles would still be lace articles, we do not find it necessary to pass upon the question of whether the foundation mesh or net should be regarded as unfinished lace.

It is well established that the term "laces", according to common meaning, includes lace articles. *United States* v. *Max Littwitz, Inc.*, 18 C.C.P.A. (Customs) 341, T.D. 44588; *United States* v. *F. M. Jabara & Bros.*, 19 C.C.P.A. (Customs) 76, T.D. 44899.

We think the testimony clearly establishes that each of the articles here involved is a finished filet-lace article without the added button-

hole stitches upon the edges; that is to say, if said stitches were removed, the articles would still be lace articles.

The testimony on behalf of appellee was to the effect that it was not necessary to put the buttonhole stitching on the articles to make their edges fast, and that such articles are often made without buttonhole stitched edges; that the purpose of putting the buttonhole stitching on the edges of the articles was to improve their appearance, and that such stitching serves no utilitarian purpose whatever; that the buttonhole stitch is a well-recognized embroidery stitch, and that said stitch upon the articles in question constitutes embroidery.

The evidence upon behalf of the Government was, generally, to the effect that said buttonhole stitch upon the edges of the articles was not embroidery, and that the articles were not embroidered. However, the testimony of two of the Government's witnesses upon this point is somewhat indefinite. One such witness, Charles A. Bihler, testified that the stitch upon the edges of the articles in question is a well-recognized embroidery stitch. He further testified upon direct examination that the buttonhole stitch was put upon the edge chiefly to prevent it from rolling or becoming fringy, but upon cross-examination he testified as follows:

R. X Q. Look at exhibit 3 in this case. I direct your attention to the two portions of the edge of that exhibit which are marked with tags as exhibit 3–A and exhibit 3–B, being the portions of the edge from which the buttonhole stitch was removed, and, after you examine those two places, tell me if the knots which remain in the mesh are fast knots or whether they ravel easily.—A. They are safe. They are fast.

R. X Q. These are fast?—A. Yes, sir.

R. X Q. So the removal of the buttonhole stitch from this exhibit or the two exhibits which you have examined and found to have a fast-knotted mesh, would not result in the rolling or the fringing you described?—A. It would not, but it would make it unsalable.

R. X Q. That is a different situation?—A. Yes, sir.

R. X Q. If the filet-lace articles in this case are made with the same kind of mesh as appears in this exhibit 3, that is with the fast knots on each corner of the mesh, would you presume to correct your testimony with reference to such articles?—A. I would correct my testimony on those particular articles. They are fast.

Another witness for the Government, H. Albert Philips, testified as follows:

Q. Will you state whether or not that edge, if removed, would allow the filet net to unravel?—A. The filet net does not unravel. Of course you can pull it out, but as a lace maker I say the filet net does not unravel.

He further testified that said stitching is put upon the edge "as a finish and to hold the net together."

With respect to said buttonhole stitching the Customs Court in its decision said:

*  *  *  After this "darning stitch" or filling-in process is completed, which, as we have held, produces an unfinished lace, there is a design worked on the

edges of this merchandise by means of a needle and thread, which is known as a "buttonhole stitch." An examination of the record in this case, including an inspection of the samples, is convincing that this "buttonhole stitch" on the edges of the samples is embroidery. It answers all the definitions of embroidery laid down by this court and the Court of Customs and Patent Appeals in all the recently decided cases on embroidery   *   *   *.

Counsel for the defendant, in his reply brief filed herein, contends that the embroidery on the edges of the articles in question is not embroidery and that it is nothing more than a finishing process to keep the edges from unknotting and unraveling. Aside from the testimony of plaintiffs' witnesses that these edges are embroidered, and that the embroidery is not placed thereon for the purpose of keeping the edges from unknotting and unraveling, an examination of the samples in evidence conclusively establishes that with this embroidery removed from these edges they are still fast and complete edges in and of themselves, and that it is not necessary that this embroidery should be added to keep the edges from unknotting or unraveling.

We think the weight of the evidence supports the foregoing conclusion of the Customs Court that said buttonhole stitch is embroidery, and, this being true, we are clear that the articles here involved are embroidered lace articles, dutiable at 75 per centum ad valorem, as held by the trial court. *United States* v. *Marshall Field & Co.*, 18 C.C.P.A. (Customs) 469, T.D. 44761.

The judgment appealed from is *affirmed*.